**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE MOORE on behalf of himself :
and others similarly situated, :
 :
  Plaintiff, : Case No. 1:19-cv-5413
 :
v. :
 : Hon. Virginia M. Kendall
SAVING INSURANCE AND :
FINANCIAL SERVICES, INC., BRIAN :
SAVING, INSURED BY WADZ, LLC, :
RICHARDSON MARKETING GROUP, :
LLC and DERYCK RICHARDSON :
 :
  Defendants. :
_____/

## FIRST AMENDED COMPLAINT

### Preliminary Statement

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Richardson Marketing Group, LLC ("Richardson Marketing Group") made repeated automated telemarketing calls to the cellular telephone number of individuals, including the Plaintiff, to promote Allstate's insurance services in violation of the TCPA. Calls were also made to residential telephone lines despite their presence on the National Do Not Call Registry, such as the Plaintiff's.

3. Some of the calls were made pursuant to an agreement that Richardson Marketing Group had with Saving Insurance and Financial Services, Inc. ("Agent Saving"). Mr. Moore filed the instant lawsuit on August 12, 2019, alleging that these calls violated the TCPA.

4. Remarkably, in spite of being served with that complaint, Richardson Marketing Group continued its automated calling conduct to Mr. Moore advertising Allstate and made more calls to him in October of 2019 pursuant to an agreement it had with Insured by Wadz, LLC ("Agent Wadz").

5. This Complaint also relates to Defendants' conduct making telemarketing calls to individuals in the absence of any "do not call" policy or training, as well as making such calls to individuals who previously indicated that they no longer wanted to be contacted, and to otherwise obtain injunctive and monetary relief for all persons injured by Defendants' conduct.

6. The Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

7. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

8. Plaintiff George Moore is a resident of Illinois in this District.

9. Defendant Richardson Marketing Group, LLC is an Ohio limited liability company with a registered agent of Deryck Richardson, 4843 Drayton Rd. in Hilliard, OH

43026. Richardson Marketing Group places telemarketing calls into this District, as it did with the Plaintiff.

10.     Defendant Deryck Richardson resides at 4843 Drayton Rd. in Hilliard, OH 43026. Mr. Richardson physically places the telemarketing calls for Richardson Marketing Group and directs the business activities of the company, and purposefully made telemarketing calls into this District, as he did with the Plaintiff.

11.     Defendant Saving Insurance and Financial Services, Inc is a corporation with its principal office located at 11535 S Central Ave, Alsip, IL 60803 in this District.

12.     Defendant Brian Saving resides in this District and is located at 11535 S Central Ave, Alsip, IL 60803. Mr. Saving manages the telemarketing operations for Saving Insurance and Financial Services, Inc. and directs the business activities of the company.

13.     Defendant Insured by Wadz, LLC is a limited liability company with its principal office located at 1119 Nerge Rd. in Elk Grove Village in this District.

**Jurisdiction & Venue**

14.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this District, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit. The services that were promoted on those telemarketing calls were also provided in this District.

**The TCPA**

16.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

3

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

17. The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system … to any telephone number assigned to a … cellular

telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

18.     The TCPA provides a private cause of action to persons who receive such calls.

*See* 47 U.S.C. § 227(b)(3).

19.     According to findings by the Federal Communication Commission ("FCC"), the

agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly

and inconvenient.

20.     In 2013, the FCC required prior express written consent for all autodialed or

prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer:  (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on behalf
> of a specific seller; and (2) having received this information, agrees unambiguously
> to receive such calls at a telephone number the consumer designates.[] In addition,
> the written agreement must be obtained "without requiring, directly or indirectly,
> that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The TCPA's Requirement to Have Sufficient Policies In Order to Honor Requests to Stop
Contacting Individuals.</u>

21.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding
concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving
telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

22.     The FCC was instructed to "compare and evaluate alternative methods and
procedures (including the use of … company-specific 'do not call' systems …)" and "develop
proposed regulations to implement the methods and procedures that the Commission determines
are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

23.     Pursuant to this statutory mandate, the FCC established company-specific "do not
call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

24.     The FCC found that "the company-specific do-not-call list alternative is the most
effective and efficient means to permit telephone subscribers to avoid unwanted telephone
solicitations." *Id.* at 8765, ¶ 23. 19.

25.     However, recognizing that an honor system would probably be insufficient, the
FCC found that it "must mandate procedures for establishing company-specific do-not-call lists
to ensure effective compliance with and enforcement of the requirements for protecting
consumer privacy." *Id.* at ¶ 24. 20.

26.     It accordingly placed the burden on telemarketers to implement and prove the
implementation of their compliance procedures.

27.     These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

28.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

29.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

30.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

31.     Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have implemented the required policies and procedures.

The National Do Not Call Registry

32.     The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

Individual Liability under the TCPA

33.     Mr. Richardson is the owner and operator of Richardson Marketing Group and is liable for its conduct.

34.     Mr. Saving is the owner and operator of Saving Insurance and Financial Services, Inc.

6

35.     Under the TCPA, an individual such as Mr. Richardson or Mr. Saving, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47. U.S.C. § 217 (emphasis added).

36.     When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

37.     Mr. Richardson personally participated in the actions complained of by utilizing the dialing equipment used to send the telemarketing calls, and by personally authorizing the conduct and by the fact that he is charged with its compliance with state and federal telemarketing laws.

38.     Mr. Saving personally participated in the actions complained of by personally authorizing the conduct and by the fact that he is charged with its compliance with state and federal telemarketing laws for his company. Furthermore, Mr. Saving instructed Richardson Marketing Group regarding the dates and times of the calls, volume of leads he could accept, and numbers to call, consistent with his directive from Allstate.

The Growing Problem of Automated Telemarketing

39.　"Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

40.　"The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

41.　In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

42.　*The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Him*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-him-1530610203.

43.  Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

44.  According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 17, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

45.  The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 17, 2019).

**Factual Allegations**

Agent Saving and Richardson Marketing Group

46.  Agent Saving provides automobile and life insurance services for Allstate.

47.  Agent Saving uses telemarketing to promote its services.

48.  Richardson Marketing Group provides that telemarketing.

49.  Recipients of these calls, including Plaintiff, did not consent to receive them.

Agent Wadz and Richardson Marketing Group

50.  Agent Wadz provides automobile and life insurance services for Allstate.

51.  Agent Wadz uses telemarketing to promote its services.

52.  Richardson Marketing Group provides that telemarketing.

53.  Recipients of these calls, including Plaintiff, did not consent to receive them.

54.  Richardson Marketing Group's telemarketing efforts on behalf of Agent Saving and Agent Wadz include the use of automated dialing equipment, including predictive dialers.

55.     The Defendant uses this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone for autodialed calls. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Moore

56.     The telephone numbers in question, (630) XXX-3205 and (630) XXX-1188 are residential numbers.

57.     They are not associated with any business of Mr. Moore.

58.     The numbers have been on the National Do Not Call Registry for more than ten years prior to the receipt of the calls at issue.

59.     The telephone number (630) XXX-3205 is registered to a cellular telephone service.

60.     All the calls that the Plaintiff answered from Richardson Marketing Group followed a common pattern.

61.     The Plaintiff would answer the call.

62.     There would be a noticeable pause with silence.

63.     Then a loud "bloop" sound would play.

64.     That "bloop" sound is typically associated with the Vicidial predictive dialing system.

65.     The Caller ID on the calls were not related to Richardson Marketing Group.

66.     The Caller ID numbers would be local to the Plaintiff, but if a return call was made to them, the numbers would not be connected or would be unrelated to Richardson Marketing Group.

67.     To program a different Caller ID typically takes a computer program associated with ATDS equipment.

68.     In fact, the Caller ID most associated with the calls to Mr. Moore, (708) 555-0000, has nearly 2,000 calls reported on "RoboKiller" a computer program that attempts to identify robocalls, as well as individuals complaining as recently as July of 2019 about receiving calls from "All State". *See* https://lookup.robokiller.com/p/708-555-0000; https://www.reportedcalls.com/7085550000 (last visited August 12, 2019).

69.     When a live person eventually came on the line, they would not identify Richardson Marketing Group and instead would say, "Hello, my name is _____ and I am calling on behalf of Allstate."

70.     The caller would then promote Allstate automobile insurance services.

71.     On April 10, 12 and May 30, 2019, Richardson Marketing Group made telemarketing calls to Mr. Moore's residential number.

72.     Mr. Moore was not interested in the services being offered.

73.     However, the calls continued.

74.     To identify the caller, Mr. Moore listened to the entire telemarketing pitch on June 4, 2019.

75.     Mr. Moore was transferred to Agent Saving's office.

76.     Agent Saving's office promoted Allstate automobile insurance services.

77.     The next day, Mr. Moore sent an e-mail to Agent Saving's office and Allstate regarding the illegal telemarketing calls.

78.     Mr. Moore requested a copy of Agent Saving's Do Not Call policy and indicated that he no longer wanted to be contacted.

79.     On June 12, 2019, Mr. Brian Saving responded identifying Richardson Marketing Group as the party making the calls.

80.     Mr. Moore did not receive a copy of Agent Saving's Do Not Call policy.

81.     Despite his request, Mr. Moore continued to receive calls.

82.     Mr. Moore received calls to his cellular telephone on July 8, 9 and 24, 2019.

83.     Mr. Moore received more than 25 calls to his landline from Richardson Marketing Group after the e-mail he sent.

84.     In fact, the filing of this lawsuit did not result in getting the calls to stop.

85.     On October 22, 2019, Richardson Marketing Group made five more telemarketing calls to Mr. Moore's residential number.

86.     Mr. Moore ignored the first call.

87.     However, another call was made.

88.     To identify the caller, Mr. Moore listened to the entire telemarketing pitch on the second call on October 22, 2019.

89.     Mr. Moore was offered to be put in touch with an Allstate agent to receive an automobile insurance quote.

90.     On the following day, Mr. Moore received a call from Agent Wadz's office.

91.     Agent Wadz's office promoted Allstate automobile insurance services.

92.     The next day, Mr. Moore sent an e-mail to Agent Wadz's office regarding the illegal telemarketing calls.

93.     Mr. Moore requested a copy of Agent Wadz's Do Not Call policy and indicated that he no longer wanted to be contacted.

94.     On October 24, 2019, Mr. Matthew Wadz responded identifying Richardson Marketing Group as the party making the calls.

95.     Mr. Moore did not receive a copy of Agent Wadz's Do Not Call policy.

96.     Plaintiff and all members of the class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance.  The calls also occupied Plaintiff's telephone lines from legitimate communication.

97.     Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to him.

### Agent Saving's and Wadz's Liability

98.     Agent Saving is a "person," as defined by 47 U.S.C. § 153(39).

99.     Agent Wadz is a "person," as defined by 47 U.S.C. § 153(39).

100.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

101.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

102.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Allstate, and their Agents Saving or Wadz may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

103.    More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

104.    The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

105.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the

14

> seller's behalf and the seller failed to take effective steps within its power
> to force the telemarketer to cease that conduct.

28  C Rcd at 6592 (¶ 46).

106.    Allstate and its agents Saving and Wadz are legally responsible for ensuring that Richardson Marketing Group complied with the TCPA, even if Agent Saving and Agent Wadz did not themselves make the calls.

107.    Allstate and its agents Saving and Wadz knowingly and actively accepted business that originated through the illegal telemarketing calls from Richardson Marketing Group.

108.    By hiring a company to make calls on their behalf, Allstate and its agents Saving and Wadz "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

109.    Similarly, by accepting these leads, Richardson Marketing Group "manifest[ed] assent or otherwise consent[ed]  . . . to act" on behalf of Allstate and its agents Saving and Wadz, as described in the Restatement (Third) of Agency.  As such, Richardson Marketing Group is an agent of Agent Saving and Agent Wadz.

110.    Moreover, Allstate and its agents Saving and Wadz maintained interim control over Richardson Marketing Group's actions.

111.    For example, Allstate and its agents Saving and Wadz had absolute control over whether, and under what circumstances, they could issue an insurance quote and/or policy to a prospective customer.

112.    Allstate and its agents Saving and Wadz also gave interim instructions to Richardson Marketing Group by providing (1) geographic parameters for potential customers that Richardson Marketing Group could telemarket to; (2) the volume of calling and leads they

would purchase; and (3) the timing that Agent Saving telemarketing personnel would be available to field a prospect.

113.    As a result, Allstate and its agents Saving and Wadz not only controlled the result of the work, but also the means by which it was accomplished through interim instructions.

114.    Furthermore, Allstate and its agents Saving and Wadz continued their relationship with Richardson Marketing Group after Mr. Moore informed them that he was receiving illegal telemarketing calls from Richardson Marketing Group.

115.    Allstate and itx agents Saving and Wadz also ratified the conduct of Richardson Marketing Group by accepting the benefits of the telemarketing conduct even though they were aware that Richardson Marketing Group was making the telemarketing calls at issue for Allstate.

### Class Action Allegations

116.    As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

117.    The classes of persons Plaintiff proposes to represent are tentatively defined as:

INTERNAL DO NOT CALL LIST CLASS

All natural persons in the United States who from four years prior to the filing of this action: (1) Defendants, or a third party acting on their behalf, called (2) with two or more telemarketing calls in a 12-month period.

DO NOT CALL REGISTRY CLASS

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12 month period; (b) to a residential telephone number; (c) at any time in the period that begins four years before the date of filing this Complaint to trial.

AUTODIALED TCPA CLASS

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a

cellular telephone number; (c) through the use of the same or similar dialing system used to call the Plaintiff; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

118.    Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

119.    The classes as defined above are identifiable through phone records and phone number databases.

120.    The potential class members number at least in the thousands.  Individual joinder of these persons is impracticable.

121.    Plaintiff is a member of the classes.

122.    There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

(a) whether Defendants utilized an automatic telephone dialing system to make its calls to members of the Autodialed TCPA Class;

(b) whether Defendants systematically made multiple telephone calls to Plaintiff and members of the Do Not Call Registry Class;

(c) whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(d) Whether Defendants maintained a written "do not call" policy;

(e) Whether Defendants trained their employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

(f) Whether Defendants recorded or honored "do not call" requests;

(g) whether Defendants' conduct constitutes violations of the TCPA; and

(h) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

123. Plaintiff's claims are typical of the claims of class members.

124. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

125. The actions of the Defendants are generally applicable to the classes as a whole and to Plaintiff.

126. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

127. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

128. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA's Do Not Call Provisions

129. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

130.    Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

131.    The Defendants' violations were negligent and/or willful.

## Count Two:
## Violation of the TCPA's Automated Telemarketing Call Provisions

132.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

133.    The Defendants violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's cellular telephone number using an automatic telephone dialing system, or (b) by the fact that others made those calls on their behalf.

134.    The Defendants' violations were negligent and/or willful.

135.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

## Count Three:
## Violations of the TCPA's Internal Do Not Call Provisions

136.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

137.    Defendants placed numerous calls for telemarketing purposes to Plaintiff's and Internal DNC List Class Members' telephone numbers.

138.    Defendants did so despite not having a written policy pertaining to "do not call" requests.

139.    Defendants did so despite not training their personnel on the existence or use of any internal "do not call" list.

140.    Defendants did so despite not recording or honoring "do not call" requests.

141.    Defendants placed two or more telephone calls to Plaintiff and Internal DNC List Class Members in a 12-month period.

142.    Plaintiff and Internal DNC List Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

<u>**Relief Sought**</u>

For himself and all Class members, Plaintiff requests the following relief:

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that Defendants' and/or their affiliates', agents', and/or other related entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from making autodialed calls, except for emergency purposes, to any cellular telephone number;

F.      An award of damages to Plaintiff and the Classes, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys,

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100